IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD A. STERRETT, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 14-235 |
| | ) | Judge Cathy Bissoon/ |
| | ) | Chief Magistrate Judge Maureen P. Kelly |
| GIANT EAGLE, INC.; GIANT EAGLE, | ) | |
| INC. *doing business as* OK GROCERY | ) | |
| COMPANY; OK GROCERY COMPANY, | ) | |
| INC.; GENERAL WAREHOUSEMEN & | ) | |
| EMPLOYEES, LOCAL UNION NO. 636 | ) | Re: ECF Nos. 46 and 48 |
| *Affiliated with the INTERNATIONAL* | ) | |
| *BROTHERHOOD OF TEAMSTERS*, | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I.     RECOMMENDATION

Plaintiff, Richard A. Sterrett ("Plaintiff"), initiated this civil action against Defendants

Giant Eagle, Inc. *d/b/a* OK Grocery Company, OK Grocery Company, Inc. (collectively, "OK

Grocery"), and General Warehousemen & Employees, Local Union No. 636 ("the Union") after

Plaintiff's employment with OK Grocery was terminated in October of 2013.

Presently before the Court is a Motion to Dismiss Count I of the First Amended

Complaint submitted on behalf of OK Grocery, ECF No. 46, and a Motion to Dismiss Amended

Complaint Filed by Defendant, Teamsters Local 636. ECF No. 48. For the reasons that follow,

it is respectfully recommended that both Motions be granted.

### II.     REPORT

#### A.     FACTUAL AND PROCEDURAL BACKGROUND

According to the First Amended Complaint, Plaintiff was employed by OK Grocery as a

warehouse maintenance worker at OK Grocery's warehouse facility in Crafton, Pennsylvania

from March 31, 2007 through October 29, 2013. ECF No. 39, ¶ 7. Plaintiff alleges that he

suffers from migraines and in 2010 began to request intermittent unpaid leave under the Family

and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654. Id. at ¶¶ 8, 10. OK Grocery

authorized the intermittent leave but required Plaintiff to obtain re-certification throughout each

year. Id. at ¶ 11. Plaintiff alleges that, as his requests for FMLA leave "were repeated," OK

Grocery increased the scrutiny of Plaintiff's employment activity and his FMLA applications and

required Plaintiff to resubmit medical reports on several occasions. Id. at ¶¶ 12, 13. Plaintiff

also alleges that his supervisor began to belittle his medical condition and leave requests which

made it uncomfortable for Plaintiff to ask for or use FMLA leave. Id. at ¶ 14.

On October 11, 2013, after Plaintiff reported for work, he began to suffer a migraine.

Plaintiff contends that his efforts to control the migraine were unsuccessful and that he

consequently requested, and was granted, permission from the shift manager to leave work on

intermittent FMLA leave. Id. at ¶¶ 16-18. When Plaintiff reported to work on his next

scheduled shift, he was directed to the office of the warehouse manager where, with a Union

representative present, Plaintiff was asked questions about his work activity on October 11,

2013. Id. at ¶¶ 18-19. Following the meeting, Plaintiff was sent home pending further

investigation by OK Grocery. Id. at ¶ 19. Plaintiff attended another meeting with company

management and a Union representative on October 18, 2013, following which he was again sent

home. Id. at ¶ 20. OK Grocery subsequently terminated Plaintiff's employment by letter dated

October 31, 2013, finding that Plaintiff's conduct on October 11, 2013, violated company policy

regarding Theft, Dishonesty, Sleeping, Starting, Quitting, Break Time and Due Care, which in

turn violated a Last Chance Agreement ("LCA") that Plaintiff had previously entered into on

July 7, 2011. Id. at ¶ 21.

Plaintiff complains that OK Grocery's finding that he violated company policy was merely pretext for terminating him for taking FMLA leave and ran afoul of the collective bargaining agreements entered into between OK Grocery and the Union on September 20, 2011, and November 16, 2012, which requires "just cause," a written warning and use of progressive discipline and counseling before an employee may be terminated. Id. at ¶ 22. Plaintiff also contends that, despite his requests for representation and assistance in pursuing a grievance against OK Grocery, the Union declined to pursue the matter on his behalf. Id. at ¶¶ 22-25.

Plaintiff initiated this action on February 19, 2014, bringing claims for breach of the Collective Bargaining Agreement ("CBA") against OK Grocery, a claim for breach of duty of fair representation against the Union, and claims for retaliation and interference against OK Grocery under the FMLA. ECF No. 1. On April 16, 2014, OK Grocery filed a Motion to Dismiss asking that Count I of the Complaint brought against them for breach of the CBA be dismissed for failure to state a claim. ECF No. 16. Rather than filing an Amended Complaint at that time, Plaintiff submitted a Brief in Opposition to Motion to Dismiss. ECF No. 18. On September 29, 2014, a Report and Recommendation was filed by the undersigned in which it was recommended that the Motion to Dismiss be granted. ECF No. 36. It was not until then that Plaintiff sought leave to file an amended complaint. ECF No. 37. The Court granted Plaintiff's request on October 1, 2014, and simultaneously vacated the Report and Recommendation previously filed. ECF: 10/1/14 Text Order.

Plaintiff filed a First Amended Complaint on October 8, 2014, wherein he has brought claims against OK Grocery for breach of the LCA as well as breach of the CBA (Count I); a claim for breach of duty of fair representation against the Union (Count II); and claims for

retaliation and interference against OK Grocery under the FMLA (Counts III and IV, respectively).  ECF No. 39.

On October 16, 2014, OK Grocery filed a Motion to Dismiss Count I of the First Amended Complaint, ECF No. 46, to which Plaintiff filed a Brief in Opposition on November 19, 2014.  ECF No. 51.  OK Grocery filed a Reply to Plaintiff's Response on November 24, 2014.  ECF No. 53.  On October 20, 2014, the Union filed a Motion to Dismiss Amended Complaint, ECF No. 48, to which Plaintiff filed a Response and Brief in Opposition on November 19, 2014.  ECF Nos. 50, 52.  As such both Motions are ripe for review.

**B.     STANDARD OF REVIEW**

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff.  Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008).  The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint.  See California Publ. Employees' Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), *citing* Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Nor must the Court accept legal conclusions set forth as factual allegations.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id., *citing* Papasan v. Allain, 478 U.S. 265, 286 (1986).   Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

## C.      DISCUSSION

### 1.      OK Grocery's Motion to Dismiss Count I

#### a.      Breach of the CBA

At Count I of the First Amended Complaint, Plaintiff reiterates his claim that OK Grocery violated the CBA by terminating his employment without just cause; by failing to comply with the fourteen day time limitation on investigations involving suspension or discharge of employees; by failing to give Plaintiff the requisite verbal or written warnings prior to termination; and by not allowing Plaintiff to grieve or arbitrate the termination of his employment.

In their present Motion to Dismiss, OK Grocery argues, as they did in their prior Motion,[1] that Plaintiff's claim for breach of the CBA should be dismissed because the CBA does not govern Plaintiff's termination and thus the alleged failure to abide by its terms is of no moment. Specifically, OK Grocery argues that the LCA, which Plaintiff entered into on July 7, 2011, supersedes the CBA and, in particular, the just cause provision and the progressive discipline procedures contained therein. Indeed, all the cases relied upon by OK Grocery stand for the proposition that when an employee is terminated under a last chance agreement, the collective bargaining agreement and its various provisions are irrelevant since the last chance agreement

---

[1] In fact, in their brief filed in support of the instant Motion to Dismiss, OK Grocery has incorporated their brief filed in support of its previously filed Motion to Dismiss and merely argues that Plaintiff has failed to cure the defects in the original Complaint cited therein. See ECF No. 47, p. 2; ECF No. 17.

supersedes the relevant collective bargaining agreement. See Boise Cascade Corp. v. Paper

Allied-Indus., Chemical and Energy Workers (PACE), Local 7, 309 F.3d 1075, 1085 (8th Cir.

2002); Coca-Cola Bottling Co. of St. Louis v. Teamsters Local Union No. 688, 959 F.2d 1438,

1440-41 (8th Cir. 1992); Tootsie Roll Indus., Inc. v. Local Union No. 1, Bakery, Confectionery

and Tobacco Workers' Int'l Union, 832 F.2d 81 (7th Cir. 1987); Stahly v. Amalgamated Transit

Union, Local 996, __ F. Supp. __, 2014 WL 835601 (N.D. Ind. Mar. 3, 2014); Hay Adams Hotel

LLC v. Hotel & Restaurant Employees, Local 25, 2007 WL 1378490 (D.D.C. May 9, 2007);

Continental Airlines, Inc. v. Int'l Bhd. Of Teamsters, 391 F.3d 613, 618 (5th Cir. 2004).

Although not binding on this Court, these cases are nevertheless persuasive under the

circumstances of this case.

> The LCA at issue here states, in pertinent part, that:
>
>> 4. In the event that [Plaintiff] is determined by the Company to have committed any dishonest act, or falsified any Company document or information provided to the Company, at any time during the remainder of his employment with OK Grocery Company, the Company will have the right to discharge [Plaintiff] for cause and no prior warning will be required.
>>
>> 5. If [Plaintiff] is discharged pursuant to any provision of this Agreement, the Union and [Plaintiff] agree not to file any NLRB charge, grievance, lawsuit, or any other legal or administrative proceeding against the Company in connection with such discharge. If discharged, [Plaintiff] also agrees not to file any NLRB charge, grievance, lawsuit or any other legal or administrative proceeding against the Union in connection with such discharge.

ECF No. 17-1, p. 2, ¶¶ 4, 5. Plaintiff therefore clearly waived his right to pursue the protections

provided under the CBA if he was discharged pursuant to the LCA or for committing "any

dishonest act, or falsif[ying] any Company document or information provided to the Company."

ECF No. 17-1, p. 2, ¶¶ 4, 5. Because it appears that Plaintiff was discharged following a finding

by OK Grocery that he violated company policy regarding theft, dishonesty, sleeping, starting,

quitting, break time and due care in violation of the LCA, the CBA and the provisions governing

termination are irrelevant. Therefore, OK Grocery had no duty to abide by the relevant

provisions of the CBA and their failure to do so could not have violated the CBA.

Plaintiff nevertheless argues that the language of the LCA is unclear and/or ambiguous as

to whether it was intended to apply to future CBAs because the LCA states only that it

supersedes all *prior* agreements, and because the November, 2012 CBA entered into after

Plaintiff executed the LCA does not specify that the LCA continues to control. The fact that the

LCA states that it supersedes all prior agreements, however, does not preclude a finding that it

was intended to supersede future agreements as well. Indeed, the LCA clearly and

unambiguously states that the agreement is in effect for the "remainder of [Plaintiff's]

employment," notwithstanding any future CBAs that may be negotiated. In addition, as pointed

out by OK Grocery, the November 16, 2012 CBA subsequently entered into provides that:

> No contract or agreement shall be entered into between the Company and
> any employee or group of employees or their representatives that will, in
> any way, conflict with or supersede this Agreement.

ECF No. 18-1, p. 2, ¶ B. Thus, contrary to Plaintiff's argument, the plain language of the CBA

indicates that only *future* agreements that conflict with the CBA shall be superseded by the CBA.

The LCA, however, was executed prior to the November 16, 2012 CBA. Plaintiff therefore is

unable to show that the LCA is superseded by the November 16, 2012 CBA. His termination

therefore remains governed by the terms of the LCA and not that of the CBA.

Plaintiff also argues that he did not commit a dishonest act or otherwise violate the LCA

and, consequently, could not have been discharged pursuant to the LCA.[2] Plaintiff therefore

concludes that his termination is necessarily governed by the CBA and OK Grocery had a duty to

---

[2] Although Plaintiff makes much of the fact that violations of policies regarding due care, sleeping, starting, quitting, and break time are not contemplated by the LCA, and that any such violation therefore would be subject to the procedures set forth in the CBA, he does not dispute, nor can he, that dishonesty would run afoul of the LCA.

comply with the procedures set forth therein. Plaintiff's argument, however, overlooks the fact

that the LCA specifically states that, in the event that Plaintiff is determined *by the Company* to

have committed any dishonest act, the Company will have the right to discharge Plaintiff. As

such, when Plaintiff signed the LCA he agreed to let OK Grocery decide whether or not he

committed an act of dishonesty without recourse by Plaintiff or the Union. Having agreed to

allow OK Grocery to determine in their discretion whether Plaintiff violated the LCA, Plaintiff

cannot now be heard to challenge that finding so as to avoid the agreed upon consequences.

In this manner, Plaintiff's reliance on United Steel Workers of America, AFL-CIO-CLC

v. Lukens Steel Co., 969 F.2d 1468 (3d Cir. 1992) ("Lukens"), is misplaced. In Lukens, three

employees had entered in to last chance agreements with Lukens in order to maintain their

employment. The agreements stated that if the employee were suspended for violating a

condition of the agreement, he would be afforded an opportunity to plead his case before the

Disciplinary Committee; that the disposition of the Disciplinary Committee would be final; and

that neither the employee nor the Union shall have recourse through the arbitration/grievance

procedure to protest the suspension or disposition invoked by the Disciplinary Committee. Id. at

1473. Each employee was subsequently found by Lukens to have violated a condition of their

respective last chance agreements and each was ultimately terminated. When the employees

attempted to grieve their terminations, Lukens rebuffed those efforts and the Union filed suit.

The district court granted summary judgment in favor of Lukens finding that the last chance

agreements prohibited the employees from pursuing the grievance and arbitration procedures set

forth in the collective bargaining agreement. Id. at 1470-71.

On appeal, the Union argued that before arbitration is waived, it must first be determined

that the employee violated a condition of the last chance agreement, and that the waiver merely

operates to preclude the employee from challenging the penalty imposed by the Disciplinary

Committee once he has been found in violation. Because the last chance agreements failed to

specify who was to make the initial determination whether the employee has committed a

violation, the Union argued that the agreements do not preclude the employees from using the

grievance and arbitration procedures to resolve the threshold question of guilt. Id. at 1473. The

United States Court of Appeals for the Third Circuit agreed, finding that, although the last

chance agreements at issue clearly preclude an employee who has violated the agreement from

arbitrating the penalty imposed by the Disciplinary Committee, the agreements do not

specifically state who is to decide the threshold question whether an employee has in fact

committed a violation and that, because the last chance agreements were silent on the issue, it

could not be said that the parties expressly excluded the Union from arbitrating the question of

guilt.

Here, however, as previously discussed, the LCA *does* state who is to decide the

threshold issue of guilt, namely, OK Grocery. Plaintiff not only agreed to allow OK Grocery to

make that decision but agreed not to file "any NLRB charge, grievance, lawsuit, or any other

legal or administrative proceeding against the Company in connection with such discharge."

ECF No. 17-1, p. 2, ¶ 5. Moreover, Plaintiff entered into the LCA with a Union representative

present. Thus, unlike in Lukens, the language of the LCA demonstrates that Plaintiff agreed to

waive his CBA protections relative to the determination of guilt as well as the propriety of the

penalty imposed. See Mun. Employees Org. of Penn Hills v. Municipality of Penn Hills, 876

A.2d 494, 499-500 (Pa. Commw. Ct. 2005) (finding that where the last chance agreement

expressly provides that the employer is to determine the threshold question of guilt, the waiver

provision applies to that question as well as to the employees ability to challenge the penalty

9

imposed). Under these circumstances, Plaintiff's protestations that he did not commit a

dishonest act are insufficient to overcome the plain language of the LCA or its application to

Plaintiff's discharge.

Plaintiff's alternative argument that the waiver provision of the LCA is unenforceable

because there is no clear expression of waiver of his right to arbitrate is equally unpersuasive.

Specifically, Plaintiff contends that a valid waiver requires the specific language that the

determination of guilt determined by the Company "in its sole discretion shall be final and not

subject to the grievance/arbitration procedures of the CBA," and that because the LCA in this

case is devoid of such specificity, it is invalid. ECF No. 51, p. 16. The Court disagrees.

As previously discussed, the LCA provides that in the event it is determined by the

Company that Plaintiff committed any dishonest act at any time during the remainder of his

employment, OK Grocery has the right to discharge Plaintiff for cause and without prior

warning. ECF No. 17-1, p. 2, ¶ 4. It also provides that if Plaintiff is discharged pursuant to any

provision of this Agreement, Plaintiff agrees not to file any NLRB charge or pursue a grievance,

lawsuit, or any other legal or administrative proceeding against the Company. Id. at ¶ 5.

Although the LCA does not specifically contain the words "in its discretion" or in the

Company's "sole discretion," it is implicit in the language that "in the event it is determined by

the Company to have committed a dishonest act," that the determination is in the Company's

discretion and no one else's. To suggest otherwise is to ignore the plain language of the LCA

and effectively eliminate the words "by the Company." See Nicholson v. West Penn Allegheny

Health Sys., 2007 WL 3120275, at *10 (W.D. Pa. Oct. 23, 2007), *aff'd*, 297 F. App'x 157 (3d

Cir. 2008), *citing* Golson-El v. Runyon, 812 F. Supp. 558, 560 (E.D. Pa.), *aff'd*, 8 F.3d 811 (3d

Cir. 1993) ("[a] last chance agreement must be strictly construed"). In addition, the Court finds

little, if any, distinction between language stating that the Company's determination of guilt is not subject to the grievance/arbitration procedures of the CBA and language that Plaintiff agrees not to pursue a grievance, lawsuit, or any other legal or administrative proceeding relative to the Company's decision. Both provisions clearly convey that Plaintiff is waiving his right to pursue a grievance and/or arbitration regarding the termination of his employment.[3]

Plaintiff also argues that OK Grocery are somehow estopped from arguing that the protective provisions of the CBA are inapplicable because they previously abided by the progressive disciplinary practices contained therein. To support his position, Plaintiff points to a single occasion in 2012 when Plaintiff's work absences apparently "accumulated," and OK Grocery gave him the "appropriate notice" as required under the CBA. Because OK Grocery did not treat the LCA as superseding the CBA in that particular instance, Plaintiff argues that OK Grocery somehow had a duty to abide by the terms of the CBA relative to the termination of his employment. The difficulty with Plaintiff's argument, however, is that excessive work absences do not, without more, suggest that Plaintiff violated a company policy or that he engaged in a dishonest act. Such absences therefore do not appear to be contemplated by the LCA and do not provide the basis for invoking the provisions of the LCA over that of the CBA. In addition, even if excessive absenteeism fell within the prohibitions outlined in the LCA, the fact that OK Grocery did not terminate Plaintiff's employment at that time could only be categorized as a windfall to Plaintiff and does not preclude OK Grocery from ever enforcing the LCA.

---

[3] The Court also notes here that it is not without significance that Plaintiff was faced with termination in July of 2011 and signed the LCA in order to maintain his job. As with all last chance agreements, the LCA provided Plaintiff with "one last opportunity" to reform his conduct. ECF No. 17-1, p. 1. To that end, OK Grocery agreed not to terminate Plaintiff's employment in exchange for Plaintiff's promise to refrain from engaging in certain proscribed conduct and to waive certain procedural rules and protections under the CBA if he did. See Lukens, 969 F.2d at 1470. Plaintiff could have refused to sign the LCA and contested his termination through the grievance process but he chose to sign it and is now bound by its terms.

Further, Plaintiff's argument that the LCA is invalid or unenforceable because it is

indefinite in duration is equally unavailing. In so arguing, Plaintiff relies on Int'l Union of

Operating Engineers, Local Union No. 542 v. Allied Erecting & Dismantling Co., 556 F. App'x

109 (3d Cir. 2014) ("Allied Erecting"), which involved collective bargaining agreements and not

a last chance agreement. Moreover, the collective bargaining agreements at issue permitted one

party (Allied Erecting) to control when the agreements terminated allowing it to extend the

agreements indefinitely into the future. Id. at 114. The United States Court of Appeals for the

Third Circuit found that the indefinite nature of the agreements ran afoul of federal policy and

national labor relations policy because if Allied Erecting could extent the agreements

indefinitely, it could bind the Union to the terms of the collective bargaining agreements for an

endless period of time thereby effectively freezing wages and benefits. Id. at 113.

In this case, however, both parties agreed that the LCA would remain in effect for the

remainder of Plaintiff's employment and thus Plaintiff himself controlled its termination.

Further, contrary to Plaintiff's assertion, nothing in the LCA prevents the Union from negotiating

pay raises and new benefits on Plaintiff's behalf. Thus, Allied Erecting does not provide a basis

for finding the instant LCA unenforceable or for finding that the provisions of the CBA govern

Plaintiff's termination. Because the CBAs are irrelevant to Plaintiff's discharge, it follows that

OK Grocery cannot have breached the CBA in terminating Plaintiff's employment. Plaintiff's

claim for breach of the CBA brought at Count I therefore is properly dismissed.

### b. Breach of the LCA

Plaintiff has also alleged at Count I of the First Amended Complaint that OK Grocery

breached the LCA when they discharged him from employment. Specifically, Plaintiff claims

that, because he did not commit a dishonest act as found by OK Grocery, OK Grocery breached

the implied duty of good faith in the LCA when it terminated his employment on that basis.  As

previously discussed, however, the LCA plainly provides that OK Grocery had the right to

terminate Plaintiff in the event that it was determined *by the Company* that Plaintiff committed a

dishonest act.  Thus, when Plaintiff signed the LCA he agreed to let OK Grocery decide whether

or not he committed an act of dishonesty without recourse by Plaintiff or the Union.  See

**Discussion**, *supra*, at pp. 7-10.  Because Plaintiff agreed to allow OK Grocery to determine in

their discretion whether Plaintiff violated the LCA, Plaintiff cannot now be heard to challenge

that finding or claim that OK Grocery breached the LCA by exercising that discretion.  As such,

Plaintiff's claim brought against OK Grocery for breach of the LCA is properly dismissed.

### 2. The Union's Motion to Dismiss Count II

At Count II of the First Amended Complaint, Plaintiff appears to bring a claim against

the Union pursuant to the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, *et seq*.,

for allegedly breaching its duty of fair representation when it refused to represent Plaintiff and/or

pursue a grievance on his behalf relative to the termination of Plaintiff's employment.  See Vega

v. Teamsters Local Union No. 102, 2014 WL 3894272, at *2 (D.N.J. Aug. 7, 2014), *citing* Farber

v. City of Paterson, 440 F.3d 131, 143 (3d Cir. 2006) (noting that the duty of fair representation

is a duty implied by Section 9(a) of the National Labor Relations Act).

"[A] union breaches its duty of fair representation if its actions are either 'arbitrary,

discriminatory, or in bad faith.'"  Acosta v. HOVENSA LLC, 529 F. App'x 297, 299-300 (3d

Cir. 2013), *quoting* Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67 (1991).  "[A] union's

actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's

actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be

irrational."  Id. at 300.  Similarly, bad faith will be found where the plaintiff is able to show that:

(1) the union and its representatives harbored animosity towards the employee; and (2) that animosity manifested itself as a material factor in the union's handling of the employee's grievance. Morgan v. Commc'n Workers of Am., AFL-CIO, Dist. 1, 2009 WL 749546, at *8 (D.N.J. Mar. 17, 2009), *citing* Maskin v. United Steel Workers of America, 136 F. Supp. 3d 375, 382 (W.D. Pa. 2000) ("If the union representative was shown to be hostile to the plaintiff and his decisions about the grievance were influenced by his hostility rather than by appropriate considerations, it would be clear that the union breached its duty of fair representation").

Conversely, although a union is obligated to exercise its power fairly under the collective bargaining agreement it should not pursue a grievance that it believes in good faith does not warrant such action. Abramowich v. CSX Transp., Inc., 975 F. Supp. 2d 513, 522 (W.D. Pa. 2013), *citing* Bazarte v. United Transp. Union, 429 F.2d 868, 872 (3d Cir. 1970). See Vaca v. Sipes, 386 U.S. 171, 191 (1967) (finding that although a union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion an employee does not have an absolute right to have a grievance taken to arbitration). As such, "[a]n employee is subject to the union's discretionary power to settle or even to abandon a grievance, so long as it does not act arbitrarily, even if the employee's claim was meritorious." Abramowich v. CSX Transp., Inc., 975 F. Supp. 2d at 522. It therefore follows that "proof that a union acted negligently or exercised poor judgment is not enough to support a claim that a union breached its duty of fair representation." Id.

Here, the Union contends that Plaintiff has failed to allege sufficient facts to support the inference that it either acted irrationally or with animosity toward Plaintiff when it declined to pursue a grievance on Plaintiff's behalf and thus Plaintiff's claim for breach of the duty of fair representation should be dismissed.

Indeed, Plaintiff's allegations in the First Amended Complaint that the Union failed to act in good faith and abandoned Plaintiff arbitrarily, discriminatorily and in bad faith are nothing more than conclusions devoid of any factual support. See ECF No. 39, ¶¶ 57, 58. In addition, Plaintiff's assertions that the Union has represented other Union members who have taken FMLA leave and filed grievances on their behalf, see id. at ¶¶ 61, 62, are of no moment as Plaintiff has not alleged any facts from which it could be inferred that the other Union members had executed a last chance agreement or were otherwise similarly situated to Plaintiff. Further, in light of the Court's earlier finding that the LCA supersedes the CBA, and the fact that the LCA contains a provision pursuant to which Plaintiff agreed that neither he nor the Union would pursue a grievance or arbitration if Plaintiff was terminated pursuant to the LCA, it is difficult to find that the Union's decision not to pursue a grievance on Plaintiff's behalf was so far outside a wide range of reasonableness as to be irrational.

Plaintiff nevertheless argues that the Union demonstrated animosity toward him when a Union representative allegedly told Plaintiff to find another job because his supervisor did not want him back. Plaintiff, however, has not alleged in the First Amended Complaint that the Union demonstrated animosity toward him and thus may not do so here. See Commonwealth of Pa. ex. rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (finding that a plaintiff may not amend the Complaint through the brief filed in opposition to a motion to dismiss). Moreover, it is not at all clear that a single statement made by an unidentified Union representative without the context in which the statement was made suffices to demonstrate animosity. Even if the statement could be so construed, however, Plaintiff has not alleged any facts to support a finding that the statement or the supervisor's protestations, rather than the LCA, was a material factor in the Union's decision not to pursue a grievance on Plaintiff's

behalf.  Under these circumstances, Plaintiff has failed to state a claim for breach of the duty of fair representation against the Union and Count II of the First Amended Complaint should be dismissed.

### D.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that OK Grocery's Motion to Dismiss Count I of the First Amended Complaint, ECF No. 46, and the Union's Motion to Dismiss Amended Complaint, ECF No. 48, be granted.[4]

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation.  Failure to timely file objections will waive the right to appeal.  Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).  Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

RESPECTFULLY SUBMITTED,


/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE


Dated: January 22, 2015


cc:    The Honorable Cathy Bissoon
       United States District Judge

       All Counsel of Record Via CM-ECF

---

[4] Accordingly, the only remaining claims would be Plaintiff's claims for retaliation and interference under the FMLA brought against OK Grocery at Counts III and IV, respectively.