IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD A. STERRETT,<br>     Plaintiff,<br><br> vs.<br><br><br><br>GIANT EAGLE, INC.; GIANT EAGLE,<br>INC. *doing business as* OK GROCERY<br>COMPANY; OK GROCERY COMPANY,<br>INC.; GENERAL WAREHOUSEMEN &<br>EMPLOYEES, LOCAL UNION NO. 636<br>*Affiliated with the INTERNATIONAL*<br>*BROTHERHOOD OF TEAMSTERS*,<br>     Defendants. | Civil Action No. 14-235<br>Judge Nora Barry Fischer/<br>Chief Magistrate Judge Maureen P. Kelly<br><br><br><br><br>Re: ECF No. 93 |

## REPORT AND RECOMMENDATION

**I. RECOMMENDATION**

Plaintiff Richard A. Sterrett ("Plaintiff"), initiated this civil action against Defendants Giant Eagle, Inc., Giant Eagle, Inc. *d/b/a* OK Grocery Company, and OK Grocery Company, Inc. (collectively, "Giant Eagle" or "Defendants"), alleging that Defendants violated the Family Medical Leave Act, 29 U.S.C. §§ 2601, *et seq.* ("FMLA"), when they terminated Plaintiff's employment in October of 2013.[1]

Presently before the Court is a Motion for Summary Judgment submitted on behalf of Defendants. ECF No. 93. For the reasons that follow, it is respectfully recommended that the Motion be granted.

---

[1] Defendants have represented, and Plaintiff does not dispute, that OK Grocery Company is improperly identified in the caption of the case as it is not a separate entity but rather is an operating division of Giant Eagle, Inc. It should also be noted here that, although General Warehousemen & Employees, Local Union No. 636 ("the Union") was initially named as a defendant in this matter, it was dismissed from the case on February 25, 2015, pursuant to this Court's ruling on a Motion to Dismiss. See ECF Nos. 48, 54, 58.

## II. REPORT

### A. FACTUAL AND PROCEDURAL BACKGROUND

The record in this case demonstrates that Plaintiff was a maintenance mechanic at Giant Eagle's dry goods warehouse facility in Crafton, Pennsylvania, from March 31, 2007, until his employment was terminated on October 29, 2013. ECF No. 39 ¶ 7; ECF No. 96 at 10.[2] The record also demonstrates that Plaintiff had been discharged from his job with Defendants on an earlier occasion in July of 2011 "for Dishonesty, using Bereavement Leave for improper purposes, and Theft of Time." Id. at 105. Plaintiff, however, subsequently entered into a Last Chance Agreement ("LCA") with Defendants and the Union in order to "[get his] job back." Id. at 21-22, 105-107. Under the terms of the LCA, Plaintiff was given "one last opportunity to reform his conduct, and become a productive, reliable, honest Team Member for the Company." The LCA also provided that, if Giant Eagle determined that Plaintiff had "committed any dishonest act . . . during the remainder of his employment . . . [it] will have the right to discharge [Plaintiff] for cause and no prior warning will be required."[3] Id.

In October of 2013, Plaintiff was working the night shift -- 11 p.m. to 7 a.m. -- from Tuesdays to Saturdays. Id. at 10, 11, 21. Plaintiff testified at his deposition that there were normally four other maintenance employees who worked the night shift, but that he was there by himself on Saturdays because there were less people in the warehouse. Id. at 11, 14, 34. Plaintiff also testified that during his shift he was responsible for taking care of any special projects that he was given and, if there were no special projects, he was supposed to do

---

[2] Unless otherwise specified, the Court has cited to the evidence of record contained in the Appendix submitted by Defendants in support of their Motion for Summary Judgment only because it is the more comprehensive Appendix submitted by the parties.

[3] Although Plaintiff disputes the applicability of the LCA to his employment, the issue has already been decided by the Court in adjudicating Defendants' earlier filed Motion to Dismiss. ECF Nos. 36, 58.

preventative maintenance on the various pieces of equipment in the facility which included changing batteries, washing off the equipment, greasing and checking bearings, and checking and/or replacing tires. Id. at 10, 34. Plaintiff's supervisor, Jeff Chulack ("Chulack"), posted a list of equipment that required preventative maintenance every month and provided information and instructions regarding any special projects that needed to be done. Id. at 11, 12, 151. Plaintiff allowed that there was enough equipment on the preventative maintenance list to keep him busy for his entire shift. Id. at 12.

The record also demonstrates that Plaintiff suffered from migraine headaches and had since approximately 1993, following chemotherapy for the treatment of non-Hodgkin lymphoma. Id. at 18. Plaintiff testified that, starting at least the three years before he started working at Giant Eagle, he suffered from a migraine at least once a week and that they would last anywhere from five minutes to five hours. Id. at 19. As such, on May 18, 2010, Plaintiff began taking intermittent FMLA leave and did so throughout the remainder of his employment with Giant Eagle. Id. at 23, 339 ¶ 5; ECF No. 39 ¶¶ 10-11. Indeed, the record shows that Plaintiff submitted the requisite medical certifications establishing his on-going need for FMLA leave, and was approved for intermittent FMLA leave, six times during his employment with Giant Eagle and that, during those periods, Plaintiff took forty-two full days off and left early seven times. ECF No. 96 at 26, 339 ¶¶ 5, 7.

On occasion, it appears that Giant Eagle requested that Plaintiff have his physician provide additional information to support his request for FMLA leave. Id. at 28. Once that information was provided, Plaintiff's requests for intermittent FMLA leave would be authorized. Id. at 339 ¶ 4. In one instance in 2012, however, Plaintiff was not approved for FMLA leave for a short period of time because, according to Plaintiff, although he submitted the additional

3

information from his physician in a timely fashion, the employee responsible for processing the information was on vacation when Plaintiff turned it in. Id. at 29, 128. Because of the delay, Plaintiff was not given FMLA leave but nevertheless took the day off. It appears, however, that Plaintiff did not suffer any loss of pay or benefits because of the absence and, notwithstanding the above incident, Plaintiff was never otherwise denied intermittent FMLA leave but was approved for FMLA leave each time he invoked it. Id. at 26, 339 ¶¶ 4, 5, 7.

On Friday, October 11, 2013, Plaintiff was scheduled to work his normal shift from 11:00 p.m. until 7:00 a.m. on Saturday, October 12, 2013. It is undisputed that Plaintiff "punched in" at the employee time clock at 10:56 p.m. on Friday night. Id. at 40. It is also undisputed that Plaintiff telephoned the warehouse supervisor, Braeden Mathieu ("Mathieu"), at approximately 4:25 a.m. on Saturday, October 12th and informed Mathieu that he had a migraine and needed to leave work early on FMLA leave. Id. at 45. It appears that Plaintiff then left the warehouse and went home without punching out at the employee time clock. Id. at 45, 152.

The next day, Sunday, October 13, 2013, Chulack, who, as maintenance manager, was responsible for preparing the weekly payroll report, logged into the computer to prepare the report which was due later that afternoon. Id. at 161-163. While preparing the report, a "payroll exception" popped up on the computer screen indicating that Plaintiff had not punched out when he left work the previous day. Id. at 152, 161. Chulack consequently viewed the videotape recording of the maintenance shop area in order to determine when Plaintiff left work so that he could complete the payroll report. Id. at 151-152. Chulack testified at his deposition that he was able to establish from the videotape that Plaintiff left at approximately 4:30 a.m.; he also noticed "that [Plaintiff] wasn't doing much work that night." Id. at 152, 153, 161. Chulack therefore reviewed the videotape a second time the next day, Monday, October 14, 2013, and

4

simultaneously documented Plaintiff's activities during the 5½ hours that Plaintiff was on the clock. Id. at 153, 154. Chulack's account of Plaintiff's activities indicates that the only work Plaintiff performed during his shift was to change two batteries which took approximately ten minutes. Id. at 175-178. Chulack's notes, as well as the videotape, reflect that Plaintiff spent the remainder of his shift in the break room, the locker room, the lunch room or outside.[4] Id. at 175-178, 364.

Chulack gave his notes reflecting the time-line of Plaintiff's activities to his supervisor, James A. Hilzendeger ("Hilzendeger"). Id. at 154, 213-215. Hilzendeger then contacted Bill Guy ("Guy"), Giant Eagle's Human Resource manager at the time, and asked that Guy meet with Plaintiff when he showed up for work that evening, Monday, October 14, 2013. Id. at 184-185, 213-215. During that meeting, at which Jan Kish, the shift supervisor at the warehouse, and Plaintiff's union representative, Tom Kinzel ("Kinzel"), were also in attendance, Plaintiff admitted that he has spent extended periods of time during his Saturday shift in the break room and that the only work he performed was to change the two batteries. Id. at 35, 200, 216-217. Plaintiff claimed that he had a migraine and was trying to work through it. Id. at 200, 221. Plaintiff also offered to make up the time or to have his pay deducted but was nevertheless removed from the schedule pending further investigation. Id. at 187, 201, 216, 225.

On October 18, 2013, a due process meeting was held at which Plaintiff, two of his union representatives, and Giant Eagle representatives Hilzendeger and Jill Tilford were present. Id. at 214, 218-220, 337 ¶ 4. During the meeting, Plaintiff again admitted that he performed no work

---

[4] Although Plaintiff asserts that these facts are in dispute because he had a migraine and tried to relieve the headache in the break room and/or locker room after taking medication, the fact that Plaintiff may have had a migraine does not negate what is clearly on the videotape or create a material issue of fact relative to the time he spent in the locker and/or break rooms. Indeed, Plaintiff does not dispute, nor can he, that the videotape shows that during his 5½ hour shift he spent periods of 42 minutes, 38 minutes and 62 minutes in the break room and over 1½ hours in the employee locker room. ECF No. 95 ¶ 43; ECF No. 105 ¶ 43; ECF No. 96 at 175-78, 364.

during the night in question other than to change the two batteries and reiterated his suggestion that Giant Eagle simply not pay him for the shift. Id. at 225, 257-264, 337 ¶ 5. Despite Plaintiff's suggestion, Hilzendeger nevertheless decided to terminate Plaintiff's employment which Hilzendeger memorialized in a letter dated October 29, 2013, the same date Plaintiff's termination was to be effective. Id. at 265, 221, 337 ¶ 6. In the termination letter, Hilzendeger indicated that the decision to terminate Plaintiff's employment was based on the conclusion that Plaintiff's actions violated the LCA and because Plaintiff's actions also ran afoul of certain company policies. Id. at 221, 223-24, 265, 337 ¶¶ 6, 7.

Plaintiff filed a Complaint initiating this action on February 19, 2014, and on October 8, 2014, he filed a First Amended Complaint ("the Amended Complaint"), which remains the operative complaint. In the Amended Complaint, Plaintiff brought claims against Defendants for breach of the LCA and the Collective Bargaining Agreement ("CBA") in effect at the time (Count I); a claim for breach of duty of fair representation against the Union (Count II); and claims for retaliation and interference against Defendants pursuant to the FMLA (Counts III and IV, respectively). ECF No. 39. Following the subsequent adjudication of a Motion to Dismiss Count I of the First Amended Complaint submitted by Defendants, ECF No. 46, and a Motion to Dismiss Amended Complaint filed by the Union, ECF No. 48, the only claims remaining in the case are those brought against Defendants for retaliation and interference under the FMLA at Counts III and IV of the Amended Complaint.

Defendants filed a Motion for Summary Judgment ("the Motion") as to the two remaining claims on November 20, 2015, ECF No. 93, to which Plaintiff filed a Brief in Opposition on December 31, 2015. ECF No. 104. Defendants filed a Reply Brief on January 15, 2016, ECF No. 110, thus rendering the Motion ripe for review.

6

B.     STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). See Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof"). Thus, summary judgment is warranted where, "after adequate time for discovery and upon motion . . . a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007), *quoting* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007), *quoting* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts

7

in favor of the nonmoving party. Matreale v. New Jersey Dep't of Military & Veterans Affairs, 487 F.3d 150, 152 (3d Cir. 2007); Woodside v. Sch. Dist. of Phila. Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001).

## C. DISCUSSION

### 1. Retaliation (Count III)

Where, as here, a plaintiff seeks to prove his or her FMLA claim through circumstantial evidence, the three-stage shifting burdens of proof developed for employment discrimination cases in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies. See Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 301-02 (3d Cir. 2012) ("[b]ecause FMLA retaliation claims require proof of the employer's retaliatory intent, courts have assessed these claims through the lens of employment discrimination law. Accordingly, claims based on circumstantial evidence have been assessed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 . . . (1973))". Under the McDonnell Douglas framework, the plaintiff has the initial burden of establishing a *prima facie* case of retaliation which, under the FMLA, requires the plaintiff to demonstrate that: (1) he or she invoked a right under the FMLA; (2) he or she suffered an adverse employment decision, and (3) the adverse action was causally related to the invocation of rights. Id. "Once the plaintiff satisfies these elements, the burden of production shifts to the employer to identify a legitimate non-discriminatory reason for the adverse employment action. If the employer articulates such a reason, the burden of production returns to the plaintiff to demonstrate that the employer's proffered rationale was a pretext for discrimination." Smith v. City of Allentown, 589 F.3d 684, 689-90 (3d Cir. 2009). To survive summary judgment at the pretext stage, the plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either

8

(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Anderson v. United Parcel Service, Inc., 2015 WL 1245843, at *9 (W.D. Pa. Mar. 18, 2015), *citing* Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). At all times, however, the burden of persuasion remains with the plaintiff. Smith v. City of Allentown, 589 F.3d at 690.

Here, Defendants argue that Plaintiff is unable to sustain his initial burden of demonstrating a *prima facie* case of retaliation because there is no evidence of record to establish that the decision to terminate Plaintiff's employment was causally related to his taking FMLA leave. Indeed, as argued by Defendants, the evidence shows that, between May of 2010 until he was terminated in October of 2013, Plaintiff repeatedly requested and was granted FMLA leave without any repercussions. ECF No. 96 at 23, 26, 29, 339 ¶¶ 5, 7. Moreover, Defendants could have fired Plaintiff in 2011 if they were unhappy with Plaintiff's use of FMLA leave but allowed Plaintiff to retain his job by entering into the LCA. Id. at 21-22, 105-107. Further, Hilzendeger testified that he made the decision to terminate Plaintiff's employment because Plaintiff's conduct violated the LCA as well as certain company policies. Id. at 221-24, 265, 337 ¶¶ 6, 7.

This notwithstanding, a causal connection between exercising a right under the FMLA and an adverse employment decision may be established where the plaintiff can prove "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

Plaintiff in this case argues that he has met his burden in this regard because the decision to terminate his employment was made on October 18, 2013, which was less than one week after

he took the FMLA leave at issue, and because Chulack engaged in an on-going pattern of antagonism toward him. Although Plaintiff's latter argument does not provide the basis for finding a causal connection between Plaintiff taking FMLA leave and the decision to terminate Plaintiff's employment,[5] it appears that the temporal proximity between Plaintiff taking FMLA leave on October 12, 2013, and the decision to fire him on October 18, 2013, are sufficiently close in time to suggest a causal connection between the two events. See Crowe v. Kane Reg'l Ctr., No. 2:13-CV-00900, 2014 WL 229318, at *4 (W.D. Pa. Jan. 21, 2014), *quoting* Conklin v. Warrington Twp., No. 06–2245, 2009 WL 1227950, at *3 (M.D. Pa. April 30, 2009) ("the Third

---

[5] Indeed, regardless of any animosity Chulack may have shown toward Plaintiff, there is no evidence of record from which it can be inferred that Chulack had any input whatsoever in the decision to terminate Plaintiff's employment. To the contrary, the evidence shows that the decision was made solely by Hilzendeger and that Chulack made no recommendation relative to Plaintiff's termination. ECF No. 96 at 155, 162, 220, 337 ¶¶ 6, 7. Although Plaintiff challenges Defendants' evidence in this regard, he offers no contrary evidence to support his theory but rather merely cites to the facts that Chulack provided Hilzendeger with an accounting of Plaintiff's activities after viewing the videotape and that Chulack subsequently contacted Mathieu, the supervisor who was on duty the night in question, and inquired about any communications Plaintiff had with him. Id. at 155-156. These facts, however, do not suggest that Hilzendeger consulted Chulack about what discipline might be appropriate, that Chulack voiced his opinion regarding any such discipline or that the two had any communication at all on the subject. Plaintiff therefore has failed to create an issue of material fact in this regard and thus any antagonism directed toward Plaintiff by Chulack cannot provide the basis for finding a causal connection between Plaintiff taking FMLA leave and Hilzendeger's employment decision. Furthermore, even if Chulack participated in the decision-making process, the only evidence to which Plaintiff points to support his claim is that Chulack was antagonistic toward him is that Chulack once remarked to Plaintiff as he was getting ready to leave work "oh, another migraine Monday;" that Plaintiff would find warnings regarding abuse of FMLA leave attached to his tool box when he would return to work after taking FMLA leave; and Chulack disregarded Plaintiff's seniority and refused to give Plaintiff a "G-key" to the locks in the facility but provided them to the other shift maintenance workers. ECF No. 104 at 13. Chulack's single remark made at some unidentified time relative to Plaintiff's termination, however, does not demonstrate a pattern of on-going antagonism. See Calero v. Cardone Indus., Inc., No. CIV.A. 11-3192, 2012 WL 2547356, at *8 (E.D. Pa. June 29, 2012), *citing* Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 333 (3d Cir. 1995) (an "isolated comment, although perhaps inappropriate, does not create a "pattern" of antagonism or even evidence of antagonism standing alone. Certainly it does not rise to the level of "a constant barrage of written and verbal warnings ..., inaccurate point totalings, and disciplinary action" that the Third Circuit found to constitute an intervening pattern of antagonism sufficient to establish causation in *Robinson v. Southeastern Pennsylvania Transportation Authority*, 982 F.2d 892, 895 (3d Cir.1993) . . . . Instead, it is akin to a "stray remark, unconnected with and remote from the decision-making process . . . . which this Court finds does not provide sufficient evidence from which a rational factfinder could conclude that [the plaintiff's] termination was causally related to his FMLA activity"). In addition, Plaintiff has not pointed to any evidence from which it could be inferred that it was Chulack who put the FMLA abuse warnings on his tool box or that Chulack overlooked Plaintiff's seniority or refused to give him a G-key because Plaintiff took intermittent FMLA leave. Indeed, given the absence of any such evidence, it is just as plausible that Chulack simply did not like Plaintiff or did not trust him with a G-key. Under these circumstances, Chulack's alleged antagonism toward Plaintiff does not serve to establish a discriminatory animus or a causal connection between Plaintiff exercising his rights under the FMLA and the decision to terminate Plaintiff's employment.

Circuit Court of Appeals has suggested that a temporal proximity of two days is sufficient to establish causation, *see Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 279 & n.5 (3d Cir. 2000), whereas a temporal proximity of ten days is sufficient to establish causation only when accompanied by other evidence of an employer's wrongdoing, *Shellenberger v. Summit Bancorp, Inc.,* 318 F.3d 183, 189 (3d Cir. 2003)").[6] The Court therefore finds that Plaintiff has satisfied his initial burden of demonstrating a *prima facie* case of retaliation.

Accordingly, the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for their employment decision. Defendants' contention that the decision to terminate Plaintiff's employment was based on Plaintiff's failure to perform his job responsibilities during his October 11, 2013 to October 12, 2013 shift which violated the LCA as well as various company policies, satisfies their burden in this regard. Thus, the only question remaining is whether Plaintiff has pointed to evidence of record which would show that Defendants' proffered reasons were pretext for retaliation.

As previously discussed, to meet this burden a plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Anderson v. United Parcel Service, Inc., 2015 WL 1245843, at *9, *citing* Fuentes v. Perskie, 32

---

[6] Defendants' argument that Plaintiff is unable to establish a *prima facie* case -- in particular, a causal connection -- because taking FMLA leave cannot insulate a plaintiff from being disciplined for contemporaneous misconduct, is misplaced. In Anderson v. United Parcel Service, Inc., 2015 WL 1245843, upon which Defendants rely, the defendant had not challenged the plaintiff's ability to establish a *prima facie* case of retaliation, as Defendants here have, but argued only that the plaintiff was unable to show that its proffered reasons for discharging the plaintiff were pretext for retaliation. The Court's discussion regarding the timing of the plaintiff's discharge therefore was not relative to causation or the plaintiff's *prima facie* case but was in response to the plaintiff's argument that the proximity of her use of FMLA leave and the notice of discharge were suggestive of a retaliatory intent. Thus, Anderson, does not provide the basis for finding that the instant Plaintiff is unable to establish a *prima facie* case of retaliation. See Lopez v. Lopez, 997 F. Supp. 2d 256, 271-72 (D.N.J. 2014) (finding that, while the temporal proximity between the plaintiff's leave and his termination was sufficient to meet the plaintiff's initial burden, it was not enough to establish pretext or demonstrate a retaliatory motive for his termination).

F.3d at 764. It is not sufficient, however, to "simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is . . . not whether the employer is wise, shrewd, prudent, or competent." Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997). Rather, the employee must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." Fuentes v. Perskie, 32 F.3d at 765. Because Plaintiff has not offered any evidence from which pretext could be inferred, it appears that he is unable to sustain his claim for retaliation.

Plaintiff argues that Defendants' reasons for terminating his employment were pretext for retaliation as evidenced by the fact that there were a "bagful" of inconsistent reasons that Plaintiff has otherwise discredited. However, the record shows that none of Defendants' reasons for terminating Plaintiff's employment are inconsistent. To the contrary, Defendants' reasons are all premised on the underlying fact that Plaintiff failed to perform any work while he was on the clock (and for which he was paid) and that, despite claiming that he was suffering from a migraine, did not inform the night supervisor of that fact or invoke his FMLA leave until his shift was almost over 5½ hours later. ECF No. 96 at 46, 200-01, 259. Moreover, the Court is hard-pressed to find pretext where there is not only a videotape memorializing Plaintiff's inactivity but he has admitted that he did virtually no work while on the job.

Nevertheless, the only argument Plaintiff makes with respect to Defendants' finding that Plaintiff's actions violated the LCA is that a factual issue remains as to whether the LCA "provides a legitimate factual basis for [his] discharge." ECF No. 104 at 15. Plaintiff's argument, however, ignores this Court's earlier ruling that, as a matter of law, the LCA was in effect and governed Plaintiff's employment at the time he was discharged and that under the

12

terms of the LCA, Giant Eagle had the exclusive authority to determine whether Plaintiff had violated the LCA and, upon such a finding, had the right to discharge Plaintiff for cause and without prior warning. ECF Nos. 36, 58, 96 at 105-07. Accordingly, there is no factual issue surrounding the applicability of the LCA to Plaintiff's employment and Plaintiff's argument to the contrary does not, and cannot, establish pretext.[7]

Plaintiff also takes issue with Defendants' findings that Plaintiff's actions ran afoul of Giant Eagle's policies regarding sleeping; starting, quitting and break time; due care; dishonesty and theft. Whether or not Plaintiff's actions violated these policies, however, does not speak to whether Plaintiff was properly terminated under the LCA for failing to work while he was on the clock. Moreover, with respect to the policy against sleeping on the job, Plaintiff argues that the fact that no one specifically said that he was sleeping on the job somehow demonstrates pretext. Plaintiff's argument, however, overlooks his own testimony that he was lying down in the break room with the lights out, id. at 37, and other evidence showing he was there for over 1½ hours. Id. at 175-78, 364. Under these circumstances, it could reasonably be concluded that Plaintiff was asleep on the job and whether or not he actually fell asleep is immaterial.

Further, insofar as Plaintiff argues that pretext is evident from the fact that Defendants failed to follow the procedures and provisions contained in the CBA regarding progressive discipline and the requirement that investigations are to be completed within fourteen days, his position is equally unavailing. The Court has already determined that Plaintiff's employment was governed by the LCA and that the provisions of the CBA upon which Plaintiff relies are

---

[7] Nor does Plaintiff's suggestion that Defendants' reliance on the LCA was pretextual because Hilzendeger did not immediately recall at his deposition that the LCA was amongst the evidence he reviewed when he made the decision to terminate Plaintiff's employment serve to resurrect his argument. ECF No. 104 at 6. Hilzendeger's deposition was not only taken almost two years after he made the decision to discharge Plaintiff but, having been shown the termination letter that he authored, Hilzendeger testified that he had neglected to mention the LCA that he had obtained from Bill Guy at the time and upon which he also relied on during his investigation. ECF No. 96 at 221, 265.

irrelevant. As such, Plaintiff's argument in this regard is irrelevant as well. ECF Nos. 36, 58, 96 at 105-07.

In addition, Plaintiff has failed to discredit Defendants' findings that Plaintiff violated Giant Eagle's due care policy. Plaintiff himself testified that, because of the migraine, he was unable to perform his job functions that night and that consequently changing the two batteries was a "task." Id. at 35-36, 38. Plaintiff also testified that preventative maintenance, including changing batteries, is potentially dangerous and that there was a general concern about repairing heavy machinery while working alone even when not impaired by a migraine. Id. at 11, 34. If, as Plaintiff claims, he was suffering from a debilitating headache that rendered him unable to function, it was reasonable for Defendants to conclude that he was not fit to perform potentially dangerous maintenance on the equipment in the warehouse.

Furthermore, it appears axiomatic that failing to work while on the clock, and nevertheless being credited and paid for 5½ hours of work, would run afoul of policies against dishonesty and theft of time and wages. Id. at 161, 225.

Finally, citing to his own testimony in which he states, for the first time, that there was an "unwritten rule" that maintenance mechanics working alone over the weekend did not have to do preventative maintenance but merely had to be available to "put out fires," id. at 33, Plaintiff argues that the issue is one of productivity and, because there is a factual issue regarding what a maintenance mechanic is required to do when working alone on the weekends, summary judgment is precluded. The Court disagrees.

As argued by Defendants, Plaintiff did not mention the alleged unwritten rule when he met with Defendants on Monday, October 14, 2013, and was confronted with the videotape or during the due process meeting on October 18, 2013. To the contrary, Plaintiff seemingly

admitted his misconduct and offered to have his pay deducted for the shift. Nor did Plaintiff mention an unwritten rule in his Complaint, the Amended Complaint or in his submissions relative to the Motions to Dismiss previously filed in this case. See Bell v. City of Phila., 275 F. App'x 157, 160 (3d Cir. 2008) ("[a] Plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment").

In addition, other than Plaintiff's belated assertion at his deposition, there is no evidence to support a finding that an unwritten rule existed. Indeed, Plaintiff's own deposition testimony largely contradicts his unwritten rule theory having testified earlier at his deposition that he was supposed to be doing preventative maintenance and special projects during his shift; that there was enough work on the list created by Chulack to keep him busy all night; that he was supposed to be working when on the clock; and that, although there are no guidelines, "you are supposed to work" and to "[k]eep yourself busy." ECF No. 96 at 10, 12, 25, 34, 41. Plaintiff also testified that he did not do any preventative maintenance that night because he had a migraine and not because he was only there to put out fires. Id. at 35-36. Moreover, while watching the videotape of his activities on the night in question, Plaintiff stated at one particular point that he was supposed to be taking over as maintenance man and fixing machines and, at another point, that he was on the clock and supposed to be working. Id. at 34, 41. More importantly, Plaintiff has not provided any evidence to support a finding that anyone in management or otherwise in a position to approve such a rule was aware of or endorsed it. Absent some evidence that Giant Eagle had knowledge of and/or acquiesced to the rule it cannot be said that Defendants' proffered reasons were pretextual.[8]

---

[8] Further, as pointed out by Defendants, even if Giant Eagle was aware of such a rule, having spent the majority of his shift in the locker room, break room and lunch room, it would appear that Plaintiff was not even available to put out the fires.

15

Under these circumstances, it appears clear that no fact finder could reasonable conclude that Defendants' legitimate, non-discriminatory reasons for terminating Plaintiff's employment were pretext for retaliation. Indeed, in this Court's view, the record is completely devoid of any evidence of a discriminatory animus toward Plaintiff by Defendants. As recently stated by the United States District Court for the District of New Jersey,

> [t]aking an FMLA leave of absence does not, of course, shield a plaintiff from discipline for misconduct. *See Adams v. Fayette Home Care and Hospice*, 452 Fed.Appx. 137, 141 (3d Cir. 2011) (affirming summary judgment in FMLA claim of employee terminated upon return from FMLA leave for misconduct occurring prior to leave); *Allia [v. Target Corp.]*, 2010 WL 1050043, at *11 (D.N.J. [Mar. 17,] 2010) (dismissing FMLA claim of employee terminated for poor performance and insensitivity prior to FMLA absence). Moreover, Plaintiff had taken numerous other FMLA leaves without any adverse consequences. . . . For Plaintiff to prevail, he would have to point to evidence that his termination was not based on his misconduct, or that it was based on his invocation of his rights under FMLA. Such evidence is lacking.

Lopez v. Lopez, 997 F. Supp. 2d at 271. Like the plaintiff in Lopez, Plaintiff has not only taken numerous FMLA leaves without any adverse consequences but he has failed to point to any evidence from which it could be inferred that he was discharged for any other reason than failing to work while on the clock in violation of the LCA. Accordingly, Defendants are entitled to summary judgment on Plaintiff's FMLA retaliation claim brought at Count III of the Amended Complaint.

### 2. Interference (Count IV)

Relying on Mascioli v. Arby's Restaurant Group, Inc., 610 F. Supp. 2d 419 (W.D. Pa. 2009), and Atchinson v. Sears, 666 F. Supp. 2d 477 (E.D. Pa. 2009), Defendants argue that Plaintiff's interference claim brought under the FMLA should be dismissed as moot because in all material respects it is identical to his FMLA retaliation claim. Plaintiff, however, cites to Hayduk v. City of Johnstown, 386 F. App'x 55 (3d Cir. 2010), and Erdman v. Nationwide Ins.

Co., 582 F.3d 500 (3d Cir. 2009), both of which were decided after Mascioli and Atchinson, in which the Unites States Court of Appeals for the Third Circuit found that the interference and retaliation provisions of the FMLA are "distinct provisions" that "require proof of different elements," and thus "firing an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee." Hayduk v. City of Johnstown, 386 F. App'x at 59; Erdman v. Nationwide Ins. Co., 582 F.3d at 509. See Thomas v. St. Mary Med. Ctr., 22 F. Supp. 3d 459, 473 (E.D. Pa. 2014) ("[a]n employee alleging discharge in violation of the FMLA may proceed under both an interference and retaliation theory"). Having alleged that he was discharged for requesting FMLA leave, it appears that Plaintiff is not limited to a retaliation claim but may proceed under the FMLA's interference provision as well. It should nevertheless be noted that, although Plaintiff may proceed under both theories of recovery, the Court of Appeals for the Third Circuit has recognized that the theories can overlap under certain circumstances. Erdman v. Nationwide Ins. Co., 582 F.3d at 509 n.4. Such appear to be the case here.

To prove an interference claim under the FMLA, a plaintiff must establish that: (1) he was entitled to benefits under the FMLA; and (2) his employer illegitimately prevented him from obtaining those benefits. Thomas v. St. Mary Med. Ctr., 22 F. Supp. 3d at 472, *citing* Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 401 (3d Cir. 2007). "[L]iability in an interference claim is not dependent upon discriminatory intent, but rather is based upon the act of the interference itself." Delp v. Rolling Fields, Inc., No. CIV.A. 10-285, 2012 WL 3144050, at *13 (W.D. Pa. Aug. 1, 2012), *quoting* Mascioli v. Arby's Restaurant Group, Inc., 610 F. Supp. 2d at 430. Although an employee need not prove intent, however, "an FMLA interference claim is not a strict liability statute." Id., *citing* Throneberry v. McGehee Desha Cty. Hosp., 403 F.3d 972,

17

977 (8th Cir. 2005), and Leese v. Adelphoi Village, Inc., 2012 WL 2049460, at *6 (M.D. Pa. Jun. 6, 2012), *aff'd*, 516 F. App'x 192 (2013). Of particular importance to this case, it is also true that:

> "[T]he FMLA does not provide employees with a right against termination for a reason other than interference with rights under the FMLA." *Sarnowski [v. Air Brooke Limousine, Inc.]*, 510 F.3d at 403; *see also Smith v. Difee Ford–Lincoln–Mercury, Inc.*, 298 F.3d 955, 960–61 (10th Cir. 2002) (holding that employee may be dismissed so long as "the dismissal would have occurred regardless of the employee' request for or taking of FMLA"). Therefore, "interference with an employee's FMLA rights does not constitute a violation if the employer has a "legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 508 (6th Cir. 2006).

Id.

Because it has already been determined that Defendants in this case had a legitimate reason, unrelated to Plaintiff having exercised his rights under the FMLA, for terminating Plaintiff's employment, it follows that Plaintiff is unable to establish a claim for interference. Indeed, Plaintiff's interference claim appears to be based largely on his inability to exercise FMLA rights in the future having been terminated from his employment. ECF No. 39 ¶¶ 79, 80. Once Plaintiff was legitimately terminated, however, he was no longer an employee eligible for FMLA leave and Defendants were no longer in a position to interfere with his FMLA rights. Defendants therefore are entitled to summary judgment on Plaintiff's FMLA interference claim brought at Count IV of the Amended Complaint.

## D. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Motion for Summary Judgment submitted on behalf of Defendants, ECF No. 93, be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule

established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

            RESPECTFULLY SUBMITTED,

            <u>/s/ Maureen P. Kelly</u>
            MAUREEN P. KELLY
            CHIEF UNITED STATES MAGISTRATE JUDGE

Dated: April 27, 2016

cc:  The Honorable Nora Barry Fischer
   United States District Judge

   All Counsel of Record Via CM-ECF